UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERTO SOTO,

                            Plaintiff,

            v.

MARIST COLLEGE, *et al.*,

                            Defendants.

No. 17-CV-7976 (KMK)

OPINION & ORDER

Appearances:

Roberto Soto
Bronx, NY
*Pro se Plaintiff*

Dov Kesselman, Esq.
Seyfarth Shaw LLP
New York, NY
*Counsel for Defendants*

Lisa Louise Savadjian, Esq.
LeclaiRyan
Newark, NJ
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Roberto Soto ("Plaintiff") brings this pro se Action asserting claims against Marist

College ("Marist"), Dennis Murray ("Murray"), David Yellen ("Yellen"), Lyn LePre ("LePre"),

Sue Lawrence ("Lawrence"), and Deborah Raines Colbert ("Colbert") (collectively,

"Defendants"), for unlawful discrimination and retaliation under Title VII of the Civil Rights Act

of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981; the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; the Age Discrimination in

Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; the Rehabilitation Act of 1973,

29 U.S.C. §§ 701 *et seq.*; and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.* (*See generally* Am. Compl. (Dkt. No. 27).) Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Not. of Mot. (Dkt. No. 32).) For the reasons to follow, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are assumed true for the purpose of deciding the instant Motion.

In September 2015, Plaintiff was hired by Marist, a college that "receives federal funding," to teach four courses over two semesters, with an approximate enrollment of 100 students each semester. (*See* Am. Compl. 10, 12.)[1] Plaintiff was hired by Defendant Lawrence to fill a vacancy created by the departure of a tenured professor, and Lawrence assured Plaintiff that he would be "first in line" for a tenure-track appointment. (*Id.* at 10.) Plaintiff alleges that he is "a handicapped Latino senior citizen," while the professor he replaced was white. (*Id.*) The professor Plaintiff replaced had "resigned in protest following the unfair dismissal of Raul Barcelona, an experienced Hispanic professor." (*Id.* at 11.) Upon being hired, some students told Plaintiff that they were not comfortable with the change "because a male Latino [was] replacing the female professor, who was white." (*Id.*) These students "complain[ed] to the Chair," who then "changed the entire course focus," despite having previously approved Plaintiff's syllabus. (*Id.*)

---

[1] Because the Amended Complaint lacks consecutive pagination, the Court cites to the ECF-generated page numbers at the upper right corner of each page.

As a professor at Marist, Plaintiff applied for an employee savings plan and began making contributions.  (*Id.* at 10.)  However, Marist's human resources department informed him he was not eligible for the program, and he "lost several thousand dollars['] worth of employer matching funds" as a result.  (*Id.* at 11.)

During a semester break, Defendant LePre asked Plaintiff to return to campus and directed him to change the grades of two students who had complained about grades they received in his class.  (*Id.* at 10.)  Specifically, LePre wrote to Plaintiff, "I have had two students today come in requesting a grade appeal from grades earned in your MDIA 101 class.  To be frank, I fear that more are coming."  (*Id.*)  Plaintiff declined to change the students' grades, explaining that it "was not the right thing to do."  (*Id.*)  The two students filed an appeal and had their grades raised by the dean.  (*Id.*)  Plaintiff asserts that this request "would never be asked of a tenured professor."  (*Id.*)

While Plaintiff was employed at Marist, he observed that there "were very few blacks, or Latinos[,] either in the student body or in [their] faculty ranks."  (*Id.*)  Plaintiff characterized the environment as "overwhelmingly white," and he "conveyed this observation in one of [his] media arts classes."  (*Id.*)  Soon after, Plaintiff was "called in" by LePre and told that he was "being unprofessional," and asked to stop because she "doesn't like it."  (*Id.*)

Toward the "end of the semester," Plaintiff "became severely ill and had to undergo emergency surgery" to remove his bladder.  (*Id.* at 10, 12.)  Due to "health related complications," Plaintiff was unable to finish teaching the semester.  (*Id.*at 10.)  He received a letter dated April 15, 2016 from an unspecified source, advising him that "because [he] had missed several weeks of classes which had to be taken over by others[,] [his] appointment would not be extended."  (*Id.*)  Plaintiff alleges that "this explanation was pretextual," and that he was

in fact terminated because of his age, handicap, and ethnic background, and because he "engaged in protected activity" by stating that the school lacked diversity. (*Id.*)

B.  Procedural History

After receiving a Right-To-Sue Letter from the Equal Employment Opportunity Commission ("EEOC") on July 26, 2017, (Am. Compl. 9), Plaintiff filed his initial Complaint in this Action on October 17, 2017, (Compl. (Dkt. No. 2)).  On November 29, 2017, Plaintiff was granted permission to proceed in forma pauperis.  (Dkt. No. 5.)

On December 6, 2017, Chief Judge Colleen McMahon ("Chief Judge McMahon") issued an Order directing Plaintiff to file an Amended Complaint because his Complaint had failed to state a claim.  (Order (Dkt. No. 6).)  When Plaintiff failed to file an Amended Complaint, the Action was dismissed on February 14, 2018.  (Dkt. No. 7.)  On February 26, 2018, Plaintiff filed a letter asking that his case be reopened, (Dkt. No. 9), and on February 28, 2018, his request was granted, and he was given 60 days to file an Amended Complaint, (Dkt. No. 10).  After being granted an extension, (Dkt. No. 12), Plaintiff filed a letter on May 4, 2018 that included two pages of narrative relating to his claims, (Dkt. No. 13).  On August 7, 2018, Plaintiff filed a complete Amended Complaint.  (*See* Am. Compl.)

On October 12, 2018, Defendants filed a Motion to Dismiss the Amended Complaint. (Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 33).)  Plaintiff did not file a response, and on December 11, 2018, Defendants' Motion was deemed fully submitted.  (Dkt. No. 39.)  On December 12, 2018, Plaintiff filed a letter asking the Court to "review and consider his case" but did not otherwise file a response to Defendants' Motion. (Dkt. No. 40.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Motion To Dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.*  (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motions, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010)

(italics omitted), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B.  Analysis

Plaintiff claims that Defendants' conduct violated Title VII, 42 U.S.C. § 1981, the ADA, the ADEA, the Rehabilitation Act, and the NYSHRL.  (*See generally* Am. Compl.)  Defendants argue that all Plaintiff's claims are insufficiently pled.  (*See* Defs.' Mem. 9–25.)

1.  Race Discrimination Under Title VII and NYSHRL § 296

To state an employment discrimination claim under Title VII, a plaintiff must allege that: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that action took place under circumstances giving rise to an inference of discrimination.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 65 (S.D.N.Y. 2016) (same).  "Because New York courts require the same standard of proof for claims brought under the NY[S]HRL as for those brought under Title VII, [the Court will] analyze these claims in tandem."  *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999); *see also Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010) ("We review discrimination claims brought under the NYSHRL according to the same standards that we apply to Title VII discrimination claims.").

"Employment discrimination claims need not contain specific facts establishing a prima facie case of discrimination."  *See Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 275 (S.D.N.Y. 2010) (citation omitted).  "Rather, an employment discrimination complaint 'must include only a short and plain statement of the claim that gives the defendant fair notice of what

the plaintiff's claim is and the grounds upon which it rests.'" *Id*. (alterations omitted) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). The Second Circuit has explained that "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). "The facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but rather the alleged facts "need only give plausible support to a minimal inference of discriminatory motivation." *Id.*; *see also Vega*, 801 F.3d at 87 ("[A] plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and [he or] she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."). Thus, to survive a motion to dismiss, a plaintiff need "not plead a prima facie case of discrimination," *Swierkiewicz*, 534 U.S. at 515, but "must plead enough facts to state a discrimination claim that is plausible on its face," *Roman-Malone v. City of New York*, No. 11-CV-8560, 2013 WL 3835117, at *4 (S.D.N.Y. July 25, 2013) (citation omitted). Courts making the plausibility determination "must be mindful of the elusive nature of intentional discrimination," and the concomitant frequency by which plaintiffs must "rely on bits and pieces of information to support an inference of discrimination, i.e., a 'mosaic' of intentional discrimination." *Vega*, 803 F.3d at 86 (citation, italics, and some quotation marks omitted).

Construing the Amended Complaint liberally, Plaintiff alleges three race-based discrimination claims: (1) that his appointment was terminated on the basis of his race; (2) that

he was subjected to a hostile work environment; and (3) that he was retaliated against for complaining about the lack of diversity at Marist.  (*See generally* Am. Compl.)

### a.  Unlawful Termination

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  As discussed above, to state a prima facie case of discrimination under Title VII or NYSHRL § 296, a plaintiff "must show:  (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).

Plaintiff alleges that although he was told he was terminated because he missed several weeks of classes due to surgery and related complications, "this explanation was pretextual," and that "in fact, [he] was terminated because of [his] age, [his] handicap, [and his] ethnic Latino background."  (Am. Compl. 10.)  Liberally construed, there are two allegations that arguably go to Plaintiff's racial discrimination claims.  The first is that students complained to Lawrence, the department Chair, that they were uncomfortable with a Latino male professor replacing a white female professor, and that the Chair then "changed the entire . . . focus" of one of Plaintiff's courses.  (*Id.* at 11.)  The second is that another Latino professor, Raul Barcelona ("Barcelona"), was terminated, like Plaintiff, within a year after being hired, and that the dismissal was "unfair." (*Id.* at 11–12.)

These sparse allegations are insufficient to raise an inference of discrimination relating to Plaintiff's termination. Plaintiff does not allege any facts connecting his first allegation, that his syllabus was changed after students allegedly complained about the hiring of a Latino professor, with his ultimate termination. *See Williams v. Addie Mae Collins Cmty. Serv.*, No. 11-CV-2256, 2012 WL 4471544, at *4 (S.D.N.Y. Sept. 27, 2012) ("Because [the plaintiff's] complaint and pleadings do not demonstrate any facially plausible nexus between her protected characteristics and [the defendant's] failure to hire her, her claims of discrimination based on age and race must be dismissed."); *see also Doverspike v. Int'l Ordinance Techs.*, 817 F. Supp. 2d 141, 148 (W.D.N.Y. 2010) (dismissing employment discrimination claims where "although [the plaintiff] alleges she is a Native American holding Native American spiritual beliefs, . . . [she] fails to allege any facts that could plausibly be construed as establishing [that her] discharge was based on her membership in any of the protected classes"), *aff'd*, 445 F. App'x 399 (2d Cir. 2011). Indeed, the fact that these events occurred shortly after Lawrence herself hired Plaintiff more plausibly supports the inference that Lawrence, to the extent she was also involved in the decision to terminate Plaintiff's employment, did *not* act with discriminatory animus. *See Leon v. Columbia Univ. Med. Ctr.*, No. 11-CV-8559, 2013 WL 6669415, at *8 (S.D.N.Y. Dec. 17, 2013) ("The Second Circuit has noted that 'where the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to h[im] an invidious motivation that would be inconsistent with the decision to hire." (quoting *Schnabel v. Abramson*, 232 F.3d 83, 92 (2d Cir. 2000))), *aff'd*, 597 F. App'x 30 (2d Cir. 2015); *see also Cordell v. Verizon Comm., Inc.*, 331 F. App'x 56, 58 (2d Cir. 2009) (affirming dismissal of race-based discrimination claims because the plaintiff could not overcome the same actor inference,

particularly where the adverse action "occurred only a short time after the hiring" (citation and quotation marks omitted)).

Moreover, it is not clear from the Amended Complaint who was involved in the decision not to extend Plaintiff's appointment. "[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007). Here, Plaintiff fails to plead any facts indicting who was involved in the decision to end his employment, precluding an inference that the decisionmaker was influenced by improper considerations. *See Lebowitz v. New York City Dep't of Educ.*, No. 15-CV-2890, 2017 WL 1232472, at *10 (E.D.N.Y. Mar. 31, 2017) (granting motion to dismiss Title VII claim where the plaintiff alleged discriminatory remarks by school administrators but "fail[ed] to plead any additional facts that would suggest" the defendants initiated the alleged adverse employment action because of this discriminatory animus); *Toney v. Prob. Dep't*, No. 15-CV-561, 2016 WL 859381, at *6 (E.D.N.Y. Jan. 28, 2016) ("Because by definition, non-decisionmakers play no part in the decision to terminate employment, their biases generally provide no basis for imputing to the decisionmaker an invidious motivation for the discharge." (citation and quotation marks omitted)), *adopted by* 2016 WL 868206 (E.D.N.Y. Mar. 4, 2016); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015) (granting motion to dismiss where the plaintiff "fails to allege that any of the named [i]ndividual . . . [d]efendants or anyone with control over the decision to fire [the plaintiff] made [the alleged discriminatory] comments"). Even assuming Lawrence, as the individual who hired Plaintiff, is likely a "decisionmaker" at Marist, "[i]solated derogatory remarks by a decisionmaker alone do not raise an inference of discrimination" absent "a nexus

between the remarks and the adverse employment action." *Gonzalez v. Allied Barton Sec. Servs.*, No. 08-CV-9291, 2010 WL 3766964, at *5 (S.D.N.Y. Sept. 7, 2010) (citing *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998)), *adopted by* 2010 WL 3766954 (S.D.N.Y. Sept. 27, 2010); *see also Lebowitz*, 2017 WL 1232472, at *10 (granting motion to dismiss Title VII claim where the plaintiff alleged school administrators made several derogatory comments about the plaintiff's national origin because "[s]uch stray remarks, . . . even if made by a decisionmaker, without more, cannot get a discrimination suit to a jury." (citation and quotation marks omitted)); *Roman v. Cornell Univ.*, 53 F. Supp. 2d 223, 241 (N.D.N.Y. 1999) ("[S]tatements by decisionmakers unrelated to the [termination] decisional process itself[] cannot satisfy [a] plaintiff's burden . . . ." (alterations omitted) (quoting *PriceWaterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring))).

With respect to Plaintiff's allegation that one other Hispanic professor was also terminated within a year of being hired, Plaintiff has not pled any facts that, even if true, could support an inference that the professor, about whom Plaintiff provides no details other than his name and that he was Hispanic, was terminated on the basis of his race, nor explain how that professor's termination relates to his own other than that they were both Hispanic. *See Hussey v. N.Y. State Dep't of Law/Office of Att'y Gen.*, 933 F. Supp. 2d 399, 409 (E.D.N.Y. 2013) (dismissing Title VII claim where the plaintiff alleged a pattern of discriminatory practices because "the statistics she offers cannot, standing alone, push her claim from conceivable to plausible"); *see also Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 175 (2d Cir. 2010) (affirming dismissal of discrimination claim where, although the complaint "allege[d] facts consistent with a discrimination claim, . . . it nevertheless 'stops short of the line between possibility and plausibility of entitlement to relief,' because [the] plaintiffs do not allege any facts

supporting an inference of racial animus" (quoting *Twombly*, 550 U.S. at 557)). Plaintiff alleges only that after Barcelona was fired, another professor "resigned in protest" at the "unfair dismissal." (Am. Compl. 11.) Plaintiff's general allegation that two Hispanic professors were terminated in a two-year period while "less qualified Caucasian instructors continue" at Marist, (*id.* at 12), is not sufficiently specific to state a claim. *See Jablonski v. Special Counsel, Inc.*, No. 16-CV-5243, 2017 WL 4342120, at *4 (S.D.N.Y. Sept. 28, 2017) (dismissing age discrimination claims where the plaintiff "merely asserts that other applicants hired or referred for placement . . . were younger and less qualified than her, which is entirely conclusory, naked, and devoid of further factual enhancement, and thus not entitled to a presumption that it is true" (citation and quotation marks omitted)), *modified on reconsideration in part*, 2018 WL 3979591 (S.D.N.Y. Aug. 20, 2018); *Mercado v. City of New York*, No. 13-CV-389, 2014 WL 627035, at *2 (S.D.N.Y. Feb. 18, 2014) (dismissing discrimination claims because "the allegations that the other [employees] were 'less qualified' or were promoted due to their race are conclusory and unsupported by any facts in the complaint"). Furthermore, "to demonstrate that employees not in [his] protected group were favored, [Plaintiff] must plead facts showing []he was similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self." *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 463 (S.D.N.Y. 2007); *see also Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) ("Without factual amplification, the generic allegation of disparate treatment related to an unspecified class of Caucasian person is simply not sufficient . . . ."); *Rolle v. Educ. Bus Transp., Inc.*, No. 11-CV-3855, 2013 WL 783026, at *12 (E.D.N.Y. Feb. 12, 2013) (holding that although the plaintiff "does make statements regarding the preferential treatment of Caucasian [employees] as compared to African-American [employees], [the] [p]laintiff's broad statements do not contain

the necessary 'factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged,' and lack sufficient detail to render her claim of discrimination plausible" (quoting *Iqbal,* 556 U.S. at 678)), *adopted by* 2013 WL 783011 (E.D.N.Y. Feb. 27, 2013); *DuBois v. State of N.Y.*, 966 F. Supp. 144, 147 (N.D.N.Y. 1997) (holding the plaintiff's "conclusory allegations" that she was replaced by a less qualified male could not state a claim where the complaint "fails to provide any detail as to her male replacement's qualifications, whether his duties and benefits were similar to her own, and/or the circumstances under which he succeeded her").

Absent any factual allegations connecting his termination to racial animus, Plaintiff fails to raise a "minimal inference of discriminatory motivation." *Vega*, 801 F.3d at 84; *see also Moore v. City of New York*, No. 15-CV-6600, 2017 WL 35450, at *12 (S.D.N.Y. Jan. 3, 2017) ("Beyond merely identifying himself as an African American male and noting that a number of [the] [d]efendants involved in the alleged adverse actions suffered by [the plaintiff] are 'white' and/or 'female,' [the plaintiff] proffers no other facts to support his claim that [the] [d]efendants took action against him because of his membership in a protected class."), *adopted by* 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017); *Alvarez v. Rosa*, No. 11-CV-3818, 2012 WL 651630, at *4 (S.D.N.Y. Feb. 28, 2012) (holding that "[w]hile [the] plaintiff identifies the age range, race[,] and national origin of the woman who was ultimately hired for the . . . position" she was not hired for, the plaintiff "does not allege facts from which the [c]ourt might reasonably infer that such woman was promoted because of her race, national origin[,] or age (as compared to [the] plaintiff's)"); *Kouakou v. Fideliscare New York*, 920 F. Supp. 2d 391, 398 (S.D.N.Y. 2012) (holding Title VII claim based solely on the fact that the plaintiff was of a different race than all the members of the department he was denied transfer into, and a single stray remark about the

plaintiff's race, "do not create an inference that the denial of [the] [p]laintiff's requested transfer [was] motivated by his race or national origin, particularly where [the] [p]laintiff has not alleged that his employer granted the transfer requests of other similarly situated employees outside of [the] [p]laintiff's racial group" (citation, alterations, and quotation marks omitted)); *Horne v. Buffalo Police Benevolent Ass'n, Inc.*, No. 07-CV-781, 2010 WL 2178813, at *8 (W.D.N.Y. May 28, 2010) (dismissing complaint where the plaintiff failed to provide examples of similarly situated employees being treated differently).

Plaintiff's claim of race-based discrimination is further undermined by the fact that the Amended Complaint specifically identifies Defendants' stated reason for firing Plaintiff, and Plaintiff pleads no facts explaining why that reason was pretextual. *See Powell v. Merrick Acad. Charter Sch.*, No. 16-CV-5315, 2018 WL 1135551, at *7 (E.D.N.Y. Feb. 28, 2018) (dismissing Title VII claims where the complaint included "allegations that actually undermine the inference that she was fired for discriminatory reasons"); *Frederick v. United Bhd. of Carpenters & Joiners of Am. (UBCJA) Local 926*, No. 12-CV-2387, 2014 WL 5783045, at *3 (E.D.N.Y. Nov. 6, 2014) (dismissing Title VII claims where "[the] [p]laintiff's own allegations suggest that she was terminated" for race-neutral reasons (citations omitted)); *Hussey*, 933 F. Supp. 2d at 407 ("Though [the] plaintiff insists that [the defendant's stated justification] was 'a pretext to cover up racial discrimination,' she offers no facts in support of that claim and therefore fails to allege sufficiently that the failure to promote her . . . was based on her race." (citation omitted)). Although Plaintiff states that he "believe[s] that this explanation was pretextual," (Am. Compl. 10), he pleads no facts that, if true, would enable the Court to draw the same inference. *See Williams v. Calderoni*, No. 11-CV-3020, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) ("[I]t is hornbook law that the mere fact that something bad happens to a member of a particular racial

group does not, without more, establish that it happened *because* the person is a member of that racial group."), *aff'd*, 529 F. App'x 89 (2d Cir. 2013).

Finally, Plaintiff's general allegations that "Marist is an overwhelmingly white environment," and that "there were very few minority blacks, or Latinos, either on the student body [or] in our faculty ranks," (Am. Compl. 12), do not bolster his claims absent any facts suggesting this disparity "is the result of racial discrimination." *Williams v. City Univ. of New York, Brooklyn Coll.*, No. 10-CV-2127, 2011 WL 6934755, at *6 (E.D.N.Y. Dec. 30, 2011) (holding that "the allegations in the amended complaint about the predominately Caucasian faculty and student body at the College do not render [the plaintiff's] claims of discrimination any more plausible" absent "any factual allegation that would support an inference that [the plaintiff] would have been treated differently if he was white"). For these reasons, Plaintiff's racial discrimination claims based on his termination are dismissed.

To the extent Plaintiff intended to allege that Lawrence's changing his syllabus, which he appears to allege was done in response to his students' complaints about his race, (*see* Am. Compl. 11), constituted an "adverse employment action," Plaintiff has not included sufficient detail for the Court to determine whether it significantly altered the terms of his employment. In some cases, courts have found that changes in the conditions under which a teacher is obligated to teach can constitute adverse employment actions. *See, e.g.*, *Vega*, 801 F.3d at 88 (holding that the plaintiff's "assignment to classes with increased numbers of Spanish-speaking students was an 'adverse employment action'" because it "forced [him] to spend disproportionately more time preparing for his classes . . . without additional compensation"); *Feingold v. New York*, 366 F.3d 138, 152–53 (2d Cir. 2004) (finding that being subjected to "an excessive workload" could be an adverse employment action). However, "a claim of unfair work assignments does not rise to the

level of an adverse employment action unless there is a showing that the assignments resulted in a material detriment to the employee's working conditions and not just a mere inconvenience." *Arroyo-Horne v. City of New York*, No. 16-CV-3857, 2018 WL 4259866, at *11 (E.D.N.Y. Sept. 5, 2018) (citation and quotation marks omitted); *see also LeeHim v. N.Y.C. Dep't of Educ.*, No. 17-CV-3838, 2017 WL 5634128, at *3 (S.D.N.Y. Nov. 21, 2017) ("An adverse employment action is a '*materially significant disadvantage* with respect to the terms of the plaintiff's employment.'" (quoting *Littlejohn*, 795 F.3d at 312 n.10)).

Here, Plaintiff does not allege facts explaining how the change in curriculum "materially change[d] the terms and conditions of [his] employment." *Vega*, 801 F.3d at 89 (citation and alterations omitted). There is no allegation that the changes to Plaintiff's syllabus altered his workload, or that it hindered Plaintiff's ability to adequately perform his job. *See Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693, 2017 WL 9485647, at *17 (E.D.N.Y. Feb. 23, 2017) ("Other than alleging that she was assigned six classes during the 2014-2015 academic year and stating in a conclusory fashion that such an assignment was 'disparate, disproportionate and punitive,' . . . Plaintiff has not alleged any facts showing that as a result of this action, she suffered any material change in the terms or conditions of her employment such as loss of wages, benefits, responsibilities or anything else."), *adopted by* 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017); *Pfizenmayer v. Hicksville Pub. Sch.*, No. 15-CV-6987, 2017 WL 5468319, at *8 (E.D.N.Y. Jan. 24, 2017) ("Unlike . . . in *Vega*, [the] plaintiff does not allege that she was forced to spend disproportionately more time preparing for her . . . classes, was required to do any more work, or otherwise experienced a material increase in her responsibilities as a result of [an allegedly discriminatory class assignment]."); *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[B]eing yelled at, receiving unfair criticism, receiving unfavorable schedules

or work assignments do not rise to the level of adverse employment actions because they do not have a material impact on the terms and conditions of [the] [p]laintiff's employment." (citation, alterations, and quotation marks omitted)); *Castro v. N.Y.C. Bd. of Educ. Personnel*, No. 96-CV-6314, 1998 WL 108004, at *6–7 (S.D.N.Y. Mar. 12, 1998) (finding that the plaintiff's reassignment from kindergarten to second grade and the placement of a disproportionate number of special education and hyperactive children in the plaintiff's classroom did not constitute adverse employment actions because they did not deprive her of any opportunity, cause her to suffer any attendant negative result such as a demotion or loss of wages, force her to perform duties outside the scope of her employment, or mark her as a less capable teacher). Any potential claim based on changes made to Plaintiff's syllabus and curriculum therefore fails, absent additional facts detailing how the changes impacted the conditions of his employment.

### b.  Hostile Work Environment

"Title VII prohibits an employer from discriminating in 'compensation, terms, conditions, or privileges of employment, because of [an] individual's . . . race . . . or national origin.'" *Littlejohn*, 795 F.3d at 320 (quoting 42 U.S.C. § 2000e–2(a)(1)).  The phrase "terms, conditions, or privileges of employment," 42 U.S.C. § 2000e–2(a)(1), "evinces a congressional intent to strike at the entire spectrum of disparate treatment, which includes requiring people to work in a discriminatorily hostile or abusive environment."  *Littlejohn*, 795 F.3d at 320 (alterations and quotation marks omitted).  "To establish a hostile work environment under Title VII . . . , a plaintiff must show that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Id.* at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  At the motion-to-dismiss stage, "a plaintiff need only

plead facts sufficient to support the conclusion that []he was faced with 'harassment of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (alterations omitted) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)); *see also Gonzalez v. City of New York*, No. 15-CV-3158, 2015 WL 9450599, at *4 (E.D.N.Y. Dec. 22, 2015) (same).

"[A] work environment's hostility should be assessed based on the totality of the circumstances." *Patane*, 508 F.3d at 113 (citation and quotation marks omitted); *see also Humphries v. City Univ. of N.Y.*, No. 13-CV-2641, 2013 WL 6196561, at *10 (S.D.N.Y. Nov. 26, 2013) (same). Relevant circumstances include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Humphries*, 2013 WL 6196561, at *10 (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)); *see also Rivera v. Rochester Genesee Regional Trans. Auth.*, 743 F.3d 11, 20 (2d Cir. 2012) (same). "[W]hether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry," and accordingly, the Second Circuit has "repeatedly cautioned against setting the bar too high" in the context of a motion to dismiss. *Patane*, 508 F.3d at 113–14 (citation and quotation marks omitted); *see also Humphries*, 2013 WL 6196561, at *10 (same).

Nevertheless, the incidents of harassment, generally, "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Keaton v. Conn. Dep't of Rehab. Servs.*, No. 16-CV-1810, 2018 WL 1245728, at *10 (D. Conn. Mar. 9, 2018) (quoting *Alfano*, 294 F.3d at 374). However, "even a single act can

meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano*, 294 F.3d at 374; *see also Camarda v. City of New York*, No. 11-CV-2629, 2015 WL 5458000, at *7 (E.D.N.Y. Sept. 16, 2015) (same), *aff'd*, 2016 WL 7234686 (2d Cir. Dec. 14, 2016).

Even liberally construed, the conduct alleged here, to the extent it demonstrates racial hostility at all, is "quintessentially episodic." *Harrison v. State Univ. of N.Y. Downstate Med. Ctr.*, No. 16-CV-1101, 2018 WL 4055278, at *11 (E.D.N.Y. July 6, 2018), *adopted by* 2018 WL 4054868 (E.D.N.Y. Aug. 24, 2018). Plaintiff alleges that students complained that a Latino teacher was hired to replace a white teacher and that Lawrence subsequently changed Plaintiff's syllabus, that one other Latino professor was fired for unspecified reasons, and that Plaintiff was told it was "unprofessional" to discuss the lack of diversity at Marist with his class. (Am. Compl. 10–12.) Plaintiff also makes general allegations that he was "being ignored" by human resources after he was told he was not eligible for an employee savings contribution matching program, and that LePre was hostile to him after he refused to change the grades of two of his students after their parents had complained, although neither of these allegations, even afforded a liberal interpretation, can be construed as reflecting racial animus. (*Id.*) These five isolated episodes, each of which involves entirely different actors, are insufficient to withstand a motion to dismiss. *See Duplan v. City of New York*, 888 F.3d 612, 627 (2d Cir. 2018) (affirming dismissal of complaint because allegations that the plaintiff was ostracized by supervisors over three years and was suspended without pay for ten days were insufficient to meet the "high bar" required to state a claim for a hostile work environment); *Harrison*, 2018 WL 4055278, at *12 (dismissing hostile work environment claims where the plaintiff "complain[ed] of five extremely unpleasant interactions" and uncertainty about requested sick leave "over the course of several

weeks"); *Johnson v. Conn. Dep't of Admin. Servs. Bureau of Enter. Sys. & Tech.*, No. 17-CV-901, 2018 WL 306697, at *8 (D. Conn. Jan. 5, 2018) (allegations that a defendant "cited [the] plaintiff for an unauthorized absence, gave him a negative evaluation, and denied him mentoring[,] do not rise to the level of severe or pervasive and cannot be said to have altered the conditions of [the] plaintiff's employment for the worse"); *Williams v. N.Y. State Unified Court Sys. Office of Court Admin.*, No. 16-CV-2061, 2017 WL 4402562, at *7 (S.D.N.Y. Sept. 30, 2017) (dismissing hostile work environment claim based on allegations the plaintiff "was unjustly subjected to poor performance reviews and was given additional duties above and beyond his regular assignments," and explaining that "[e]ven assuming that this conduct was motivated by discriminatory animus," the incidents were not sufficiently "severe or pervasive"); *Guy v. MTA N.Y.C. Transit*, No. 15-CV-2017, 2016 WL 8711080, at *8 (E.D.N.Y. Sept. 23, 2016) (dismissing hostile work environment claims where the plaintiff "simply identifies a series of incidents in his complaint," but "fails to allege any facts that would show that the conduct of which he complains is objectively severe and pervasive"); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08-CV-7584, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (dismissing hostile work environment claims because "[t]he gravamen of their claims is rooted in conduct that amounts to nothing more than workplace dynamics—that is, personal enmity or personality conflicts"), *aff'd*, 488 F. App'x 530 (2d Cir. 2012).

Although "[f]acially neutral incidents," such as Plaintiff's allegations that he was ignored by human resources and had a hostile relationship with LePre, "may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim," this is only the case "so long as a reasonable fact-finder could conclude that they were, in fact, based on" Plaintiff's membership in a protected class. *Alfano*, 294 F.3d at 378; *see also*

*Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3, 5 (2d Cir. 2014) (affirming dismissal of hostile work environment claim where the complaint pleaded no facts "that would allow a court to draw a reasonable inference that [the plaintiff] was subjected to any mistreatment or adverse action *because of* her race"); *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 157 (E.D.N.Y. 2015) (holding that, "even construing all of the allegations as true and drawing inferences liberally and in favor of the pro se plaintiff, there is no factual basis upon which to conclude that any of [the] defendant's actions were taken *because* of [the] plaintiff's" membership in a protected class). Here, Plaintiff has pled no facts that, even if true, could support an inference that the facially neutral incidents he alleges reflect a discriminatory motive.

Finally, with respect to Plaintiff's termination, as discussed above, Plaintiff has pled insufficient facts to enable the Court to infer that his termination was racially motivated, and his termination therefore does not bolster his race-based hostile work environment claim. *See Alfano*, 294 F.3d at 377 ("It is . . . important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.").

Thus, Plaintiff's allegations, even if true, do not adequately plead that his workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment." *Mullins v. Consol. Edison Co. of N.Y., Inc.*, No. 13-CV-6800, 2015 WL 4503648, at *12 (S.D.N.Y. July 22, 2015) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009)). "Simply stated, while Plaintiff asserts facts suggesting that he may have suffered various unpleasant incidents at the workplace, considering the allegations individually and in their totality, the factual allegations of the [Amended Complaint] do not plausibly suggest sufficient severity, pervasiveness, or a race-based

motive." *Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *4 (S.D.N.Y. July 22, 2011) (citation omitted). Therefore, Plaintiff's hostile work environment claims based on racial discrimination are dismissed.

### c. Retaliation

Title VII also prohibits discrimination against an employee "because he [or she] has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). Courts analyze claims for retaliation pursuant to Title VII under the familiar framework set forth by the Supreme Court in *McDonnell Douglas*. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*."). "Under the first step of the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of retaliation." *Id.* at 844 (citation omitted). Once the plaintiff has done so, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Id.* at 845 (citation omitted). "The employee at all times bears the burden of persuasion to show retaliatory motive." *Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014).

To establish a prima facie case of retaliation, the plaintiff must show that: "(1) []he was engaged in an activity protected under Title VII; (2) [his] employer was aware of [his] participation in the protected activity; (3) the employer took adverse action against [him]; and (4) a causal connection existed between the protected activity and the adverse action." *Kwan*, 737 F.3d at 850 (citation omitted). Accordingly, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' [he] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90; *see also Shein v. N.Y.C. Dep't of Educ.*, No. 15-CV-

4236, 2016 WL 676458, at *7 (S.D.N.Y. Feb. 18, 2016) (noting that unlike "discrimination claims under Title VII, the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's adverse action" (citation and quotation marks omitted)); *Goodine v. Suffolk Cty. Water Auth.*, No. 14-CV-4514, 2016 WL 375049, at *6 (E.D.N.Y. Jan. 29, 2016) (same). "The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010) ("[R]etaliation is unlawful when the retaliatory acts were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." (citation and quotation marks omitted)).

Plaintiff alleges that he "engaged in protected activity by stating that [Marist] lacked diversity," and that this was at least part of the reason his employment was terminated. (Am. Compl. 10.) "The term protected activity refers to action taken to protest or oppose statutorily prohibited discrimination." *Fenner v. News Corp.*, No. 09-CV-9832, 2013 WL 6244156, at *24 (S.D.N.Y. Dec. 2, 2013) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)). "Not every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer." *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (citation and quotation marks omitted). "While the law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of 'opposition' includes activities such as making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of

co-workers who have filed formal charges." *Wilson v. New York*, No. 15-CV-23, 2017 WL 9674497, at *14 (E.D.N.Y. Jan. 24, 2017) (quotation marks omitted) (citing *Cruz*, 202 F.3d at 566), *adopted by* 2018 WL 1466770 (E.D.N.Y. Mar. 26, 2018).

Construed liberally and drawing every inference in Plaintiff's favor, Plaintiff was arguably "protesting against discrimination by industry or by society in general" by discussing the lack of diversity at Marist with his class. *MacAlister v. Millenium Hotels & Resorts*, No. 17-CV-6189, 2018 WL 5886440, at *8 (S.D.N.Y. Nov. 8, 2018) (quoting *Cruz*, 202 F.3d at 566). However, even assuming Plaintiff's observations to his class were protected conduct, Plaintiff has not alleged sufficient facts to support an inference that he was terminated in response to that protected conduct. "A plaintiff must plausibly plead a connection between the act and his engagement in protected activity" in order to state a retaliation claim. *Wilson*, 2017 WL 9674497, at *14 (citing 42 U.S.C. § 2000e-3(a)). Plaintiff alleges that after he discussed the lack of diversity at Marist with his class, LePre told him he was "being unprofessional" and asked him "to stop"; Plaintiff does not specify when this interaction took place. (Am. Compl. 10.) Plaintiff also explains that some time toward the end of the semester, he missed several weeks of classes due to illness, that his classes had to be taken over by others, and that as a result he was informed his appointment would not be extended. (*Id.*) Plaintiff asserts that he "believe[s] that this explanation was pretextual." (*Id.*) However, Plaintiff pleads no facts explaining why he believes the explanation was pretextual, or any facts undermining the plausibility of the reason Defendants gave for ending Plaintiff's employment. *See Thior v. JetBlue Airways, Inc.*, No. 13-CV-6211, 2016 WL 5092567, at *6 (E.D.N.Y. Sept. 19, 2016) (dismissing retaliation claim where the complaint "does not allege facts which plausibly support a causal connection, let alone the

but-for causation required by federal law, between the protected activity and the adverse employment action").

"In order to establish [the requisite] causal connection, a plaintiff must allege (1) direct proof of retaliatory animus directed against the plaintiff; (2) disparate treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time to the protected activities." *McNair v. NYC Health & Hosp. Co.*, 160 F. Supp. 2d 601, 604 (S.D.N.Y. 2001) (citing *DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)). LePre's lone statement that Plaintiff's complaint to his students was "unprofessional," without any connection made between that and the decision not to extend Plaintiff's appointment, cannot state a claim for retaliation. *See Massaro v. Dep't of Educ. of City of New York*, No. 17-CV-8191, 2018 WL 4333989, at *4 (S.D.N.Y. Sept. 11, 2018) (holding the plaintiff failed to plead a causal connection where the complaint did not include "allegations of specific adverse actions directed at [the] [p]laintiff that closely followed the [protected activity], with specific dates identifying when the first retaliatory action commenced," to allow the court to infer retaliation); *Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc.*, No. 16-CV-4897, 2017 WL 2258374, at *11 (S.D.N.Y. May 22, 2017) (dismissing retaliation claim because "the plaintiff does not tie the [adverse employment action] to the reporting of any act of discrimination or harassment"), *adopted by* 2017 WL 2709747 (S.D.N.Y. June 22, 2017); *Feliciano v. City of New York*, No. 14-CV-6751, 2015 WL 4393163, at *9 (S.D.N.Y. July 15, 2015) (holding the plaintiff failed to state a retaliation claim because he "d[id] not point to any direct evidence that would show a causal connection between the [protected] comment to [the defendant] and the [adverse employment action]"); *Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 WL 3487032, at *19 (S.D.N.Y. July 9, 2013) (dismissing retaliation claim because the complaint "alleges no facts to

suggest that [the plaintiff's] activities, protected or not, motivated [the defendant's] decision not to promote or terminate her"), *adopted as modified by* 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013). Notably, Plaintiff does not allege that LePre was even involved in the decision to terminate him, and she is the only person alleged to be aware that Plaintiff engaged in potentially protected activity. *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 148 (2d Cir. 2010) (noting that although "it is not necessary that the supervisor who has knowledge of the plaintiff's protected activities have ordered the agent to impose the adverse action," a causal connection requires that the adverse action was made "pursuant to encouragement by a superior (who has knowledge) to disfavor the plaintiff"); *Diaz v. City Univ. of New York*, No. 13-CV-2038, 2015 WL 5577905, at *12 (S.D.N.Y. Sept. 22, 2015) ("Temporal proximity alone is not sufficient where there is no reason to infer that the individual who carried out the adverse action had knowledge of the protected activity or was acting pursuant to the instructions or encouragement of a superior with such knowledge."); *Majeed v. ADF Cos.*, No. 11-CV-5459, 2013 WL 654416, at *11 (E.D.N.Y. Feb. 20, 2013) ("A complaint that makes only a general conclusory statement that the defendant retaliated against the plaintiff, and that fails to provide any factual detail describing the specific acts of retaliation, when it occurred and *which employee* of the defendant had knowledge of the plaintiff's protected activity *or actually engaged in the claimed retaliation*, is insufficient to withstand a motion to dismiss." (emphasis added) (citation omitted)); *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 688 (S.D.N.Y. 2007) (dismissing retaliation claim where the plaintiff failed to allege, inter alia, "who actually engaged in the claimed retaliation").

Although retaliation can sometimes be inferred based on temporal proximity alone, Plaintiff did not indicate when he was reprimanded for complaining to his class about the lack of diversity, so the Court cannot determine whether his termination occurred shortly thereafter. In

the absence of additional facts plausibly connecting an adverse employment action to protected activity, a gap of just a few months has been held insufficient to infer a causal connection. *See Thior*, 2016 WL 5092567, at *6 ("Generally, the passage of even two or three months is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged." (citation, alteration, and quotation marks omitted); *McDowell v. N. Shore-Long Island Jewish Health Sys., Inc.*, 788 F. Supp. 2d 78, 83 (E.D.N.Y. 2011) (holding a three-month gap between protected conduct and termination, "unsupported by any other allegations showing plausible retaliation, is insufficient to raise an inference of retaliation"); *Muhammad v. Juicy Couture/Liz Claiborne, Inc.*, No. 09-CV-8978, 2010 WL 4032735, at *6 (S.D.N.Y. July 30, 2010) ("[M]any courts in this circuit have held that periods of two months or more defeat an inference of causation." (collecting cases)), *adopted by* 2010 WL 4006159 (S.D.N.Y. Oct. 12, 2010); *see also Williams v. City of New York*, No. 11-CV-9679, 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012) (declining to infer causation based on temporal proximity where the plaintiff did not specify when he engaged in the protected conduct). Because Plaintiff "does not provide the date" he engaged in protected activity, it is "impossible for the Court to determine the temporal proximity of the alleged retaliatory acts to the protected conduct." *Feliciano*, 2015 WL 4393163, at *9; *see also Henry*, 18 F. Supp. 3d at 412 (dismissing retaliation claim where the complaint "fails to state with even a modicum of specificity when the relevant events occurred").

Further, Plaintiff's surgery, and resulting absence from several weeks of class, "constitutes a significant intervening event which undermines but-for causation." *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 222 (E.D.N.Y. 2018) (dismissing retaliatory discharge claim where the plaintiff had been injured after engaging in protected conduct and was told she would be terminated because she could not say when she might be able to return to work). "[A]n

intervening event between the protected activity and the adverse employment action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference." *Jeanty v. Newburgh Beacon Bus Corp.*, No. 17-CV-9175, 2018 WL 6047832, at *9 (S.D.N.Y. Nov. 19, 2018) (citation and quotation marks omitted). Plaintiff's absence from several weeks of classes during the semester, which required replacing him with substitute professors, constitutes an intervening event that undermines an inference of causation. *See Dortch v. N.Y.C. Dep't of Educ.*, No. 14-CV-2534, 2016 WL 2621076, at *9 (E.D.N.Y. Mar. 23, 2016) (dismissing retaliation claim because the collection of "anonymous complaints against [the plaintiff's] . . . unprofessional behavior" was an intervening event that prevented the plaintiff from establishing causation); *Rivera v. Thurston Foods, Inc.*, 933 F. Supp. 2d 330, 342 (D. Conn. 2013) (finding an intervening incident that "alone gave [the] [d]efendant grounds to terminate [the] [p]laintiff" defeated the plaintiff's retaliation claim); *Joseph v. Marco Polo Network, Inc.*, No. 09-CV-1597, 2010 WL 4513298, at *18 (S.D.N.Y. Nov. 10, 2010) (holding the plaintiff could not establish causation where there was "[e]vidence of significant misconduct" that occurred "after the employee's protected activity" (citation omitted)); *Gangadeen v. City Of New York*, 654 F. Supp. 2d 169, 186 (S.D.N.Y. 2009) (granting summary judgment because, in light of "the lack of close temporal proximity between her speech and her discharge, and the intervening events regarding her personal medical situation and medical leave from work, [the plaintiff] has not raised an issue of fact that her speech regarding lack of training was a substantial or motivating factor in her dismissal").

Finally, Plaintiff raised this exact claim in his original Complaint, (*see* Compl. 7), and it was nonetheless dismissed, (*see* Order 3). For all these reasons, Plaintiff's retaliation claim is dismissed.

## 2. 42 U.S.C. § 1981

Section 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. The Second Circuit has construed this provision to prohibit employment discrimination on the basis of race. *See Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 260–61 (2d Cir. 2000) (holding that § 1981 covers claims of employment discrimination brought both by employees working under contract and at-will employees). The Second Circuit has instructed that, in order to plead a claim for race discrimination under § 1981, "plaintiffs must allege facts supporting the following elements: (1) [the] plaintiffs are members of a racial minority; (2) [the] defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). "This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004) (citation omitted).

Because "[t]he same standard used to analyze [§] 1981 claims is applied to Title VII claims," *Desir v. Concourse Rehab. & Nursing Ctr.*, No. 06-CV-1109, 2008 WL 756156, at *4 (S.D.N.Y. Mar. 21, 2008), Plaintiff fails to state a § 1981 claim for the same reasons his Title VII claims fail, *see Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) (noting that "claims of racial discrimination [are analyzed] identically under Title VII & § 1981"); *see also Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (noting that "[a]lthough the § 1981 claim is against [the individual defendant] and the Title VII and NYSHRL claims are against the School District,

the analysis is the same"); *Williams v. N.Y.C. Transit Auth.*, No. 10-CV-882, 2014 WL 11474810, at *2 (E.D.N.Y. Sept. 16, 2014) ("To state a prima facie claim for employment discrimination under § 1981, Title VII, ADEA, or New York law, a plaintiff must show (1) that he is a member of a protected class; (2) that he was qualified for the position in question; (3) that defendants took an adverse employment action against him; and (4) that the circumstances support an inference of discrimination on the basis of his membership in a protected class." (citation and italics omitted)), *aff'd*, 620 F. App'x 63 (2d Cir. 2015); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011) ("Claims of employment discrimination under [§] 1981 are analyzed under the same framework that applies to Title VII claims." (citing, inter alia, *Patterson*, 375 F.3d at 225)). Therefore, Plaintiff's § 1981 claims are dismissed.

### 3. ADA, Rehabilitation Act, and NYSHRL

Disability discrimination claims under the ADA and § 296 of the NYSHRL are also analyzed under the burden-shifting analysis established in *McDonnell Douglas*. *See McMillan*, 711 F.3d at 125. Under this test, the Plaintiff must first establish a prima facie case of disability-based discrimination. To do so, a plaintiff must demonstrate that: "(1) the defendant is covered by the ADA; (2) [the] plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) [the] plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) [the] plaintiff suffered an adverse employment action because of his disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010); *see also Novick v. Vill. of Wappingers Falls*, No. 17-CV-7937, 2019 WL 1382899, at *15 (S.D.N.Y. Mar. 27, 2019) (same). "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004)

(citation omitted); *see also* N.Y. Exec. Law § 296(2)(a) (making it unlawful for any "person, [including] the owner, . . . agent[,] or employee of any place of public accommodation" to discriminate on the basis of disability). The Court will thus analyze the Plaintiff's ADA and NYSHRL § 296 claims in tandem. *See Novick*, 2019 WL 1382899, at *15 (analyzing ADA and NYSHRL claims together); *Dimps v. Taconic Corr. Facility*, No. 17-CV-8806, 2019 WL 1299844, at *7 (S.D.N.Y. Mar. 20, 2019) ("The pleading standards for employment discrimination claims raised under NYSHRL mirror the pleading requirements under Title VII, the ADA, and ADEA." (citation omitted)). Additionally, Rehabilitation Act and ADA claims "impose identical requirements," *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999), and the Court will therefore analyze these claims together, *see, e.g.*, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (analyzing claims together); *Andino v. Fischer*, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010) (same); *see also Hilton v. Wright*, 928 F. Supp. 2d 530, 557 (N.D.N.Y. 2013) ("When brought together, claims under [the ADA] and [§] 504 [of the Rehabilitation Act] may be treated identically." (citing *Henrietta*, 331 F.3d at 272)).

Plaintiff alleges that he had a "leg and lower back handicap, which progressively grew worse[,] causing [him] to limp," (Am. Compl. 14), and that his handicap "required [him] to park at a handicapped zone or take taxi cabs and public transportation," (*id.* at 12). To the extent Plaintiff seeks to base his ADA claim on this purported disability, he pleads no facts whatsoever about it other than its existence. There are no allegations that anyone at Marist commented on it, failed to accommodate it, or otherwise demonstrated hostility toward Plaintiff due to this alleged disability. Nor are there any facts connecting the alleged disability to his termination. *See Ochei v. The Mary Manning Walsh Nursing Home Co.*, No. 10-CV-2548, 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) ("Where there is no reason to suspect that an employer's actions had

anything to do with membership in a protected class, other than [the] plaintiff's bald assertion that she was a member of such a class, and the people who made decisions about her employment were not, no claim is stated." (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994)); *Boyce v. N.Y.C. Mission Soc.*, 963 F. Supp. 290, 297 (S.D.N.Y. 1997) (dismissing ADA claim where the plaintiff "fails to allege any factual support that the [defendant] terminated her employment *because of* . . . a disability" (emphasis added)). Plaintiff therefore fails to state an ADA claim based on his alleged limp.

With respect to Plaintiff's illness and emergency surgery, Plaintiff alleges that he was told his appointment would not be extended due to his missing several weeks of classes after his surgery and "health related complications." (Am. Compl. 10.) Typically, "temporary disabilities do not trigger the protections of the ADA because individuals with temporary injuries are not disabled persons within the meaning of the act." *Zick v. Waterfront Comm'n of N.Y. Harbor*, No. 11-CV-5093, 2012 WL 4785703, at *4 (S.D.N.Y. Oct. 4, 2012) (citation omitted); *see also Holmes v. N.Y.C. Dep't of City Wide Admin. Servs.*, No. 14-CV-8289, 2015 WL 1958941, at *4 (S.D.N.Y. Apr. 30, 2015) ("[A] temporary, transitory impairment . . . does not qualify as a disability under the ADA."); *Davis v. Bowes*, No. 95-CV-4765, 1997 WL 655935, at *15 (S.D.N.Y. Oct. 20, 1997) ("[D]esignating a transient or temporary illness as a handicap [under the ADA] is inconsistent with Congressional intent."), *aff'd*, 159 F.3d 1346 (2d Cir. 1998). Plaintiff here did not specify whether his "health related complications" resulted in or from his alleged limp or any other permanent disability "that substantially limits one or more major life activities." *Quintero v. Rite Aid of N.Y., Inc.*, No. 09-CV-6084, 2011 WL 5529818, at *7 (S.D.N.Y. Nov. 10, 2011) (quoting 42 U.S.C. § 12102(2)); *see also Reid v. Time Warner Cable*, No. 14-CV-3241, 2016 WL 743394, at *6 (E.D.N.Y. Feb. 22, 2016) (dismissing ADA claim

where the plaintiff "does not provide any details concerning the frequency with which [his] symptoms manifested, or the duration he suffered from them"); *Fagan v. United Int'l Ins. Co.*, 128 F. Supp. 2d 182, 185 (S.D.N.Y. 2001) ("Even if the court accepts [the plaintiff's] version of the facts, he cannot show (as required to prove his prima facie case) that he had more than a temporary inability to work after his surgeries.").  (*See also* Order 7 (dismissing Plaintiff's ADA claim because he "d[id] not set forth any facts showing that he has any disability that substantially limits one or more major life activities, or that the impairment was anything more than a 'temporary injury' that is not protected by the disability statutes" (citations and alterations omitted)).)

Plaintiff alleges only that he became sick and his illness required surgery, requiring him to miss several weeks of work.  (*See* Am. Compl. 10.)  However, "[a] disability under the ADA does not include temporary medical conditions, even if those conditions require extended leaves of absence from work[,] because such conditions are not substantially limiting." *Huskins v. Pepsi Cola of Odgensburg Bottlers, Inc.*, 180 F. Supp. 2d 347, 351 (N.D.N.Y. 2001) (citation and quotation marks omitted).  Courts have dismissed ADA claims where plaintiffs were terminated after temporary illness or injury rendered them unable to work for a period of time.  *See Holmes*, 2015 WL 1958941, at *4 (holding the plaintiff failed to allege a disability under the ADA where he was terminated upon attempting to return to work after a months-long sick leave due to injury because the "temporary, transitory impairment . . . does not qualify as a disability under the ADA"); *Zurenda v. Cardiology Assocs., P.C.*, No. 10-CV-882, 2012 WL 1801740, at *8 (N.D.N.Y. May 16, 2012) (dismissing ADA claim where the plaintiff "was recovering from a knee surgery [and] was working on a part time basis" at the time she "was discharged [from] her employment"); *Huskins*, 180 F. Supp. 2d at 353 (holding a six-month

absence due to injury "was temporary" and therefore not "a disability within the meaning of the ADA"); *Graaf v. N. Shore Univ. Hosp.*, 1 F. Supp. 2d 318, 321 (S.D.N.Y. 1998) (dismissing ADA claim where the plaintiff "stated that he suffered a back injury which forced him temporarily to leave work," but "d[id] not claim that his injury was permanent"); *see also Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316 (2d Cir. 1999) (affirming summary judgment for the defendant where the plaintiff "was unable to work only for three and one-half months").

Additionally, even if Plaintiff qualified as disabled under the ADA, he nowhere asserts that he was "otherwise qualified" to perform the essential functions of his job once his absences began. Plaintiff alleges that he was "unable to finish the semester" of classes due to his health problems, and was consequently removed from teaching those classes and thereafter told his appointment would not be extended. (Am. Compl. 10, 12.) Yet, Plaintiff nowhere explains whether circumstances had changed such that he would be capable of performing the essential functions of his position, one of which undoubtedly requires that he report to his classes in order to teach them. *See Lewis v. N.Y.C. Police Dep't*, 908 F. Supp. 2d 313, 327 (E.D.N.Y. 2012), ("[C]ourts have specifically noted that the ADA does not require employers to tolerate chronic absenteeism even when attendance problems are caused by an employee's disability." (citation, alterations, and quotation marks omitted) (collecting cases)), *aff'd*, 537 F. App'x 11 (2d Cir. 2013); *Pierce v. Highland Falls-Fort Montgomery Cent. Sch. Dist.*, No. 08-CV-1948, 2011 WL 4526520, at *5 (S.D.N.Y. Sept. 28, 2011) ("The ADA does not require an employer to make a reasonable accommodation for an employee who does not attend work, nor does the Act require an employer to retain such an employee."); *Guardino v. Vill. of Scarsdale Police Dep't*, 815 F. Supp. 2d 643, 648 (S.D.N.Y. 2011) (granting motion to dismiss ADA claim based on termination for leaving his guard post to use the bathroom because the plaintiff "has not alleged that any

accommodation, other than being allowed to leave his post, would resolve the symptoms he experiences"); *Ryan v. Best Buy Co. Inc.*, No. 06-CV-157, 2009 WL 3165584, at *5 (W.D.N.Y. Sept. 27, 2009) ("If an individual is totally disabled and thus, unable to perform any job, no matter what its essential function, the decision to fire that individual cannot be discriminatory even where the individual is fired because of the disability." (citation and quotation marks omitted)); *Davis*, 1997 WL 655935, at *16 ("An employee cannot be considered 'otherwise qualified' when she is unable to report to work at the time required, because she is not able to perform one of the essential functions of her job." (collecting cases)); *Kotlowski v. Eastman Kodak Co.*, 922 F. Supp. 790, 798 (W.D.N.Y. 1996) ("The ADA does not require an employer to accommodate an employee who cannot get to work.").

Therefore, even taking Plaintiff's allegations as true, he has failed to state a claim for discrimination under the ADA, and his ADA, Rehabilitation Act, and NYSHRL claims based on disability discrimination are dismissed.

### 4. ADEA

The ADEA provides in relevant part that "[i]t shall be unlawful for an employer . . . to discharge . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a). "To establish a prima facie case [under the ADEA], a plaintiff . . . must show (1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (quotation marks omitted); *see also Barker v. Ellington Bd. of Educ.*, No. 12-CV-313, 2013 WL 6331159, at *10 (D. Conn. Dec. 5, 2013) (same).

Plaintiff includes no allegations in support of his age discrimination claims other than that he fell within the age range protected by the ADEA. This is insufficient to state a claim. *See Payne*, 2011 WL 3043920, at *2 (dismissing discrimination claims where the plaintiff did not include facts relating to discrimination on the basis of race or religion "anywhere in the narrative portion of his complaint, except for the entirely conclusory statement that he 'know[s] for sure' that he was mistreated" on that basis); *Irvine v. Video Monitoring Servs. of Am., L.P.*, No. 98-CV-8725, 2000 WL 502863, at *4 (S.D.N.Y. Apr. 27, 2000) (dismissing age discrimination claims where the plaintiff's "theory appears wholly based on a false syllogism: A) My co-workers hate me; B) I am old; C) My co-workers hate me because I'm old" (quoting *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 836 (6th Cir. 1996))). "Where there is no reason to suspect that an employer's actions had anything to do with membership in a protected class, other than [the] plaintiff's bald assertion that []he was a member of such a class, and the people who made decisions about [his] employment were not, no claim is stated." *Ochei*, 2011 WL 744738, at *3 (citing *Yusuf*, 35 F.3d at 714). Indeed, Plaintiff, who was born in 1950, (*see* Am. Compl. 4), was already a member of the age group protected by the ADEA when he was hired, further undermining any possible inference of age discrimination relating to his termination. *See Snowden v. Trs. of Columbia Univ.*, No. 12-CV-3095, 2014 WL 1274514, at *8 (S.D.N.Y. Mar. 26, 2014) ("Where, as here, an employee is already a member of the protected class when hired, any inference of age discrimination when [the plaintiff's] employment is terminated is undermined."); *Baguer v. Spanish Broad. Sys.*, No. 04-CV-8393, 2010 WL 2813632, at *14 (S.D.N.Y. July 12, 2010) ("Being in the protected class when hired undermines any inference of age discrimination."); *Elfenbein v. Bronx Lebanon Hosp. Ctr.*, No. 08-CV-5382, 2009 WL 3459215, at *7 (S.D.N.Y. Oct. 27, 2009) (noting that because "[the] [p]laintiff was 68 and

already a member of the protected class [when he was hired], any finding of pretext" is "undermine[d]" (quotation marks omitted)).  Because the Amended Complaint alleges no facts whatsoever implicating Plaintiff's age in the decision to end his employment, Plaintiff's ADEA claims are dismissed.[2]

### III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted.  However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").  Should Plaintiff choose to file a second amended complaint, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein.  The second amended complaint will replace, not supplement, the Amended Complaint currently before the Court.  It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider.  The Court will not consider factual allegations raised in supplemental declarations, affidavits, or letters.  If Plaintiff fails to abide by the 30-day deadline, this action could be dismissed with prejudice.

---

[2] Because the Amended Complaint fails to state a claim, the Court need not consider Defendants' additional argument that Plaintiff failed to allege the personal involvement of any of the individual Defendants in any unlawful conduct.  However, the Court notes that Defendants Yellen, Murray, and Raikes-Colbert were never properly served.  (*See* Defs.' Mem. 12.)  Should Plaintiff wish to file a second amended complaint and include claims against these Defendants, he will need to provide addresses where they can be served with process, and specifically allege their involvement in the events underlying his claims, in order to have his claims against them considered.

The Clerk of Court is respectfully requested to terminate the pending Motion. (*See* Dkt. No. 32.)

SO ORDERED.

Dated:     June 5 , 2019
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE